**THE UNITED STATES DISTRICT COURT FOR**

**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ALEX SMITH**<br>169 Broad Street<br>Falls Church, Virginia 22046<br><br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**ISLAMIC REPUBLIC OF IRAN,**<br>c/o Ministry of Foreign Affairs<br>Khomeini Avenue<br>United Nations Street, Tehran, Iran<br><br>**NATIONAL IRANIAN OIL COMPANY,**<br>c/o Ministry of Foreign Affairs<br>Khomeini Avenue<br>United Nations Street, Tehran, Iran<br><br>**NATIONAL IRANIAN TANKER COMPANY,**<br>c/o Ministry of Foreign Affairs<br>Khomeini Avenue<br>United Nations Street, Tehran, Iran<br><br>　　　　　Defendants. | Civil Action No.: |

**COMPLAINT**

Plaintiff Alex Smith, by and through undersigned counsel, brings this action against Defendants the Islamic Republic of Iran, the National Iranian Oil Company, and the National Iranian Tanker Company, and alleges as follows:

**I. JURISDICTION AND VENUE**

1

1.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330(a) and 1605A(a)(1), which abrogate the sovereign immunity of foreign states designated as state sponsors of terrorism with respect to claims for money damages for personal injury caused by acts of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such acts. This abrogation extends to Defendants the National Iranian Oil Company and the National Iranian Tanker Company, which are agencies or instrumentalities of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1603(b).

2.  The Islamic Republic of Iran has been continuously designated a state sponsor of terrorism by the United States Department of State since January 19, 1984, and remains so designated as of the date of this Complaint.

3.  This action satisfies 28 U.S.C. § 1605A(a)(2)(A)(ii) because the claimant, Plaintiff Alex Smith, was a national of the United States at the time each of the acts giving rise to the claims pleaded herein occurred. Each cause of action below is based upon conduct that took place on or after September 19, 2017, the date on which Plaintiff was naturalized as a citizen of the United States.

4.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(f)(4), which provides that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

## II. PARTIES

### A. Plaintiff

5.  Plaintiff ALEX SMITH  is a natural person, born on August 23, 1969, in Iran. Plaintiff is a citizen of the United States of America. He was naturalized as a United States citizen on September 19, 2017.

6. Plaintiff brings this action as a national of the United States within the meaning of 28 U.S.C. § 1605A(c)(1), and as the direct and intended victim of, and the person coerced and injured by, the acts of hostage taking, torture, and attempted extrajudicial killing carried out by Defendants and their agents after Plaintiff became a United States national.

**B. Defendants**

7. Defendant ISLAMIC REPUBLIC OF IRAN ("Iran") is a foreign state within the meaning of 28 U.S.C. § 1603(a) and has been designated a state sponsor of terrorism since January 19, 1984. Through its agents, ministries, and instrumentalities, Iran maintains and operates a system of detention, intelligence, and security operations that engages in hostage taking, torture, arbitrary detention, and other human rights abuses, including the acts directed at Plaintiff and his family pleaded herein. Iran may be served pursuant to 28 U.S.C. § 1608(a) at c/o Ministry of Foreign Affairs, Khomeini Avenue, United Nations Street, Tehran, Iran.

8. Defendant NATIONAL IRANIAN OIL COMPANY ("NIOC") is an agency or instrumentality of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1603(b). NIOC is a wholly state-owned enterprise under the direction of Iran's Ministry of Petroleum, responsible for the exploration, production, refining, and sale of Iran's oil and natural gas resources, which constitute the primary source of revenue for the Iranian government. As Iran's largest oil producer and exporter, NIOC generates billions of dollars in annual revenue, often exceeding fifty percent of Iran's total government income. Those revenues are integrated into Iran's national budget and appropriated to fund the regime's governmental operations, including the security, intelligence, and detention apparatus that carried out the acts of hostage taking, torture, and attempted extrajudicial killing directed at Plaintiff and his family. NIOC may be served pursuant to 28

U.S.C. § 1608(b) at c/o Ministry of Foreign Affairs, Khomeini Avenue, United Nations Street, Tehran, Iran.

9. Defendant NATIONAL IRANIAN TANKER COMPANY ("NITC") is an agency or instrumentality of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1603(b). NITC is a wholly state-owned enterprise controlled by the Iranian government. NITC operates one of the world's largest tanker fleets and is primarily responsible for the maritime transportation and export of Iranian oil and petroleum products. This role generates substantial revenue for Iran that is funneled into the national budget to support state functions, including the intelligence, security, and prison systems that perpetrated the acts directed at Plaintiff and his family. Together with NIOC, NITC forms a critical component of Iran's oil industry, providing the financial means by which Iran sustains the state-sponsored conduct pleaded herein. NITC may be served pursuant to 28 U.S.C. § 1608(b) at c/o Ministry of Foreign Affairs, Khomeini Avenue, United Nations Street, Tehran, Iran.

### III. STATEMENT OF FACTS

**A. Background and Defendants' Longstanding Motive to Target Plaintiff (Pre-Naturalization Context)**

10. Plaintiff is a former Iranian journalist, civil activist, and analyst who, beginning in approximately 1997, documented corruption, illicit money transfers, and power-abuse networks within the Iranian regime through his organization. Because of those activities, Plaintiff became, and remains, a target of the IRGC and MOIS.

11. On or about March 4, 2003, Plaintiff was abducted in Dubai, United Arab Emirates, by agents of the MOIS acting outside any lawful process, and was forcibly transferred by sea to

Bandar Lengeh, Iran, without arrest warrant, charge, extradition, or any judicial process. Plaintiff's entry into Dubai in March 2003 was registered, but no record of his departure exists.

12. Plaintiff was thereafter held at Ward 209 of Evin Prison in Tehran - a facility under the operational control of the MOIS - for approximately three years, including extended periods of solitary confinement. During that detention Plaintiff was subjected to severe physical and psychological torture, including repeated beatings; strikes to the head, neck, legs, and abdomen with a metal rod (including, on or about August 1, 2003, by an interrogator identified as "Saberi," causing a laceration to Plaintiff's abdomen, the scarring from which remains visible and is available for medical examination); repeated transfers to an execution room and mock executions on six separate occasions, each preceded by Plaintiff being forced to write his last will and testament; and coercive interrogation designed to extract false confessions. In protest of these conditions, Plaintiff undertook a hunger strike and sewed his lips shut.

13. On July 29, 2003, while Plaintiff was held in solitary confinement, his father was killed by agents of the Ministry of Intelligence; the killing was disguised as an accident. Plaintiff learned of his father's death from his interrogators and was denied any opportunity to mourn or to attend the funeral.

14. Plaintiff was released without bail on or about March 2006. Even after his release, Plaintiff remained under surveillance and subject to summonses and threats, and his identity documents remained under the control of the MOIS.

15. Facing renewed death threats, Plaintiff fled Iran to the Republic of Azerbaijan, where he lived in hiding, obtained refugee status, and cooperated with personnel of the United States Embassy in Baku as an analyst and informant regarding the IRGC's extraterritorial operations. In 2009 and 2010, Plaintiff survived two assassination attempts in Azerbaijan arranged by agents of

5

Iran, in retaliation for that cooperation; records of these events are maintained by the United States Embassy. Owing to the danger to his life, Plaintiff's departure was arranged confidentially by the United States Embassy and the International Organization for Migration (IOM), and Plaintiff was resettled in the United States, arriving in San Jose, California. The accumulated stress of these events later contributed to a heart attack Plaintiff suffered in California.

**B. Plaintiff's Naturalization as a United States National**

16. On September 19, 2017, Plaintiff was naturalized as a citizen of the United States. He had previously, on May 18, 2016, obtained a lawful change of name to "Alex Smith" for his safety, to avoid identification by Iranian agents. The acts pleaded in Sections C through E below, which form the bases of Plaintiff's claims, all occurred after this date.

**C. Post-Naturalization Hostage Taking, Detention, and Torture of Plaintiff's Family Members to Coerce and Punish Plaintiff**

17. After Plaintiff became a United States national and continued his journalistic and political work exposing the Iranian regime, Defendants' agents seized, detained, and abused members of Plaintiff's immediate family inside Iran. As the family members' captors made explicit, these detentions were carried out to intimidate, coerce, and punish Plaintiff - to compel him to cease his activities, to remain silent, and to act as their informant. Plaintiff was the intended target of, and was directly and foreseeably injured by, each of these acts.

18. On or about February 6, 2020, Plaintiff's very close and dear cousin, Alireza (Reza) Vazifeh Royandozogh, was arrested by the IRGC Intelligence Organization solely because he had met with Plaintiff in Istanbul, Turkey, in 2019. He was detained for approximately 62 days at the detention center of the Seyyed al-Shohada IRGC base in the Dilman area of Rey, where he was tortured; beaten, denied visitation, and threatened with death.

6

19. On or about July 23, 2021, Plaintiff's wife, (Nancy Rad), who is now a United States citizen, was arrested by the IRGC Intelligence Organization and detained for approximately 32 days at Detention Center 59 of the IRGC, Vali Asr Garrison. She was subjected to physical torture and abuse and psychological coercion, pressured to provide forced confessions, threatened to prevent her from leaving the country, and directed to gather intelligence on Plaintiff and on Iranian-Americans opposed to the regime.

20. On or about January 17, 2022, Plaintiff's stepson, then seventeen years old and now a lawful permanent resident of the United States - was arrested by the IRGC Intelligence Organization solely because of his familial connection to Plaintiff. He was detained for weeks at Qarchak Varamin Prison and tortured; subjected to solitary confinement, psychological coercion, and forced-confession attempts.

21. On or about February 15, 2022, Plaintiff's mother, and sister, were arrested by the General Department of the Ministry of Intelligence of Tehran Province and held in Detention Center 209 of Evin Prison - they under harsh conditions, including solitary confinement, denial of visitation and medical care, threats of death, and coercion to provide false televised statements against Plaintiff.

22. On or about May 9, 2022, Plaintiff's mother and sister were again summoned to the Revolutionary Court and held from approximately 9:30 a.m. until 10:00 p.m. without food or water. During this detention a Ministry of Intelligence official physically assaulted Plaintiff's sister, striking and kicking her and causing her to fall, with a bleeding nose and an injured knee.

23. Throughout these detentions, Defendants' agents conditioned the family members' treatment and release on Plaintiff's conduct, demanding that Plaintiff cease his journalism and activism and cooperate with the regime. Plaintiff, in the United States, learned of each detention

and abuse contemporaneously and suffered severe mental anguish as the direct and intended consequence.

**D. Post-Naturalization Attacks, Threats, and Attempted Killing Directed at Plaintiff**

24. In 2023, 2024, and 2025, Plaintiff was subjected to repeated telephonic and in-person threats by agents of the Islamic Republic of Iran while in Turkey, including threats to kill Plaintiff's daughter and sister, threats to "set his life on fire," and demands that he leave Turkey and cease his political and journalistic activities.

25. Agents of the Islamic Republic of Iran (identified as two Iranian nationals and one Turkish national) carried out an armed attack on Plaintiff's office in Istanbul, Turkey, in an attempt to assassinate him. This incident reported by Turkey police.

26. On Sunday, May 25, 2025, in the Bostanci area of Istanbul (Yali Yol Street), the same identified agents blocked Plaintiff's vehicle and harshly assaulted him on street.

27. Plaintiff's office in Istanbul, Turkey, was thereafter destroyed by a fire set by agents of the Islamic Republic of Iran. Reports and video of this incident are provided and are in the possession of the Federal Bureau of Investigation ("FBI").

28. On or about April 15, 2026, Plaintiff received a message from agents of the Iranian regime threatening to kill him if he did not remain silent, and explicitly referencing the use of proxy agents associated with Hezbollah and Hamas to carry out the threat.

29. Defendants' threats have extended onto United States soil. While residing in Virginia, Plaintiff received repeated telephone threats from an unknown number by a caller who stated that he was from the IRGC, threatened to kill Plaintiff, and claimed that the IRGC had "many hands" in the Washington--Maryland--Virginia area, including persons associated with Hamas and

8

Hezbollah. Plaintiff reported these threats to the Fairfax County Police Department, and to the FBI.

### E. Plaintiff's Resulting Injuries

30. As a direct and proximate result of Defendants' continuing campaign of hostage taking, threats, and attempted killing after Plaintiff became a United States national, Plaintiff has suffered severe and ongoing mental anguish and emotional distress, fear for his life and the lives of his family, and physical harm. On April 18, 2024, Plaintiff suffered a heart attack - an acute thrombotic total occlusion of the right coronary artery with multivessel coronary artery disease - and underwent emergency coronary angiography and stent implantation at BAU International Hospital in Batumi, Republic of Georgia. Plaintiff attributes this cardiac event to the accumulated and sustained stress of Defendants' ongoing persecution.

31. Plaintiff's has immediate family in Iran, Plaintiff has been unable to contact them out of fear and safety, which is a continuing source of severe emotional distress to Plaintiff.

32. Defendants' acts have also destroyed Plaintiff's professional office and livelihood in Istanbul, forced him to flee Turkey, and left him in continuing fear within the United States. Plaintiff's status as a credible political target of the regime, and the fact of his torture and persecution, have been publicly confirmed by Arzhang Davoodi, a prominent Iranian political prisoner, who has identified Plaintiff as his representative and spokesperson.

## IV. FIRST CAUSE OF ACTION

### HOSTAGE TAKING (28 U.S.C. § 1605A)

33. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

34. Section 1605A of Title 28 provides a federal cause of action for money damages for personal injury caused by an act of hostage taking committed by or on behalf of a designated state sponsor of terrorism. "Hostage taking" is defined by reference to Article 1 of the International

9

Convention Against the Taking of Hostages as the seizing or detaining of a person, combined with a threat to kill, injure, or continue to detain that person, in order to compel a third party to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained.

35. After Plaintiff became a United States national, Defendants' agents seized and detained Plaintiff's wife, stepson, mother, sister, and cousin inside Iran, and threatened them with death, injury, and continued detention, in order to compel Plaintiff - the "third party" within the meaning of Article 1 - to cease his journalistic and political activities, to remain silent regarding the regime, to abandon his cooperation with the United States, and to act as the regime's informant. The detentions and their conditions were expressly made to turn on Plaintiff's conduct.

36. These acts were committed by agents of the Islamic Republic of Iran acting within the scope of their offices and employment in Iran's state-run detention, intelligence, and security network. That network is financed by oil-and-gas revenues generated by Defendants the National Iranian Oil Company and the National Iranian Tanker Company, which are agencies and instrumentalities of the Islamic Republic of Iran whose funds are integrated into Iran's national budget and appropriated to sustain the security and detention apparatus that perpetrated these acts.

37. Plaintiff was, at all relevant times, a national of the United States and is entitled to bring this claim under 28 U.S.C. § 1605A(c).

38. As a direct and proximate result of this hostage taking, Plaintiff has suffered severe mental anguish and emotional distress, physical injury including the cardiac event described above, loss of his livelihood, and continuing fear for his life and the lives of his family. Plaintiff is entitled to compensatory damages, including solatium, economic damages, and damages for pain and suffering, together with punitive damages, as provided by 28 U.S.C. § 1605A(c).

## V. SECOND CAUSE OF ACTION

**TORTURE OF PLAINTIFF'S FAMILY AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UPON PLAINTIFF (28 U.S.C. § 1605A)**

39. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

40. Section 1605A provides a federal cause of action for money damages for personal injury caused by an act of torture committed by or on behalf of a designated state sponsor of terrorism. "Torture" is defined, through 28 U.S.C. § 1605A(h)(7) and Section 3 of the Torture Victim Protection Act of 1991, as any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering, whether physical or mental, is intentionally inflicted on that individual for purposes such as obtaining information or a confession, punishment, intimidation, coercion, or any reason based on discrimination, by or at the instigation of a public official.

41. After Plaintiff became a United States national, agents of the Islamic Republic of Iran, acting in their official capacities within Iran's state-run detention and intelligence network financed by NIOC and NITC revenues, subjected members of Plaintiff's immediate family who were in Iranian custody and physical control - including Plaintiff's wife, stepson, mother, sister, and cousin - to acts constituting torture, including beatings, solitary confinement, threats of death, denial of medical care, and coercive interrogation designed to extract false statements, for the purpose of intimidating, coercing, and punishing Plaintiff and compelling him to cease his activities against the regime.

42. Defendants committed these acts of torture against Plaintiff's family deliberately to inflict, and with knowledge that they would inflict, severe emotional distress upon Plaintiff, who was the intended target. Plaintiff, a national of the United States, is a proper claimant under 28 U.S.C. §

11

1605A(c) for the personal injury he sustained, and Defendants' conduct constitutes intentional infliction of emotional distress upon Plaintiff for which Defendants are liable.

43. As a direct and proximate result, Plaintiff has suffered severe and continuing mental anguish and emotional distress and associated physical harm. Plaintiff is entitled to compensatory damages, including solatium and damages for pain and suffering, together with punitive damages, as provided by 28 U.S.C. § 1605A(c).

## VI. THIRD CAUSE OF ACTION

### ATTEMPTED EXTRAJUDICIAL KILLING AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UPON PLAINTIFF (28 U.S.C. § 1605A)

44. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set forth herein.

45. Section 1605A provides a federal cause of action for money damages for personal injury caused by an act of extrajudicial killing, and by the provision of material support for such an act, committed by or on behalf of a designated state sponsor of terrorism. "Extrajudicial killing" is defined, through 28 U.S.C. § 1605A(h)(7) and the Torture Victim Protection Act of 1991, as a deliberated killing not authorized by a previous judgment of a regularly constituted court.

46. After Plaintiff became a United States national, agents of the Islamic Republic of Iran, acting in their official capacities and through the security and intelligence apparatus financed by NIOC and NITC revenues, attempted to kill Plaintiff in deliberate, unlawful, and extrajudicial fashion - including by carrying out an armed attack on Plaintiff's office in Istanbul, physically assaulting Plaintiff and blocking his vehicle on May 25, 2025, destroying his office by arson, and issuing repeated and credible death threats against Plaintiff, including the April 15, 2026 threat invoking Hezbollah and Hamas proxies and the threats directed at Plaintiff in Virginia.

47. By these deliberate attempts on Plaintiff's life and these credible, sustained threats of death made by agents of a state sponsor of terrorism, Defendants intentionally inflicted severe mental

pain, suffering, and emotional distress upon Plaintiff. These acts constitute attempted extrajudicial killing and the intentional infliction of emotional distress upon Plaintiff, a national of the United States, who is a proper claimant under 28 U.S.C. § 1605A(c).

48. As a direct and proximate result, Plaintiff has suffered severe and continuing mental anguish and emotional distress, physical injury including the cardiac event described above, loss of his office and livelihood, and the necessity of flight and continuing protective measures. Plaintiff is entitled to compensatory damages, including economic damages and damages for pain and suffering, together with punitive damages, as provided by 28 U.S.C. § 1605A(c).

### VII. dfdf

### DAMAGES UNDER 28 U.S.C. § 1605A(d) (Economic and Property Damages; Additional Damages)

49. Plaintiff repeats and re-alleges each of the foregoing paragraphs, including the allegations of the preceding Count under 28 U.S.C. § 1605A(c), as if fully set forth herein.

50. Liability having been established under 28 U.S.C. § 1605A(c) for Defendants' acts of attempted extrajudicial killing and the intentional infliction of emotional distress, committed by and through the provision of material support by a designated state sponsor of terrorism, § 1605A(d) authorizes Plaintiff to recover the full measure of damages arising from that conduct, including economic damages, damages for solatium, pain and suffering, and punitive damages.

51. Section 1605A(d) provides that a foreign state that is or was a state sponsor of terrorism, and its officials, employees, and agents, shall be liable to a national of the United States for personal injury or death caused by the acts described in § 1605A(a)(1), and that damages in such an action may include economic damages, solatium, pain and suffering, and punitive damages.

52. As a direct and proximate result of the same tortious conduct alleged in the preceding Count — including the armed attack upon and arson of Plaintiff's office in Istanbul carried out by agents of the Islamic Republic of Iran acting in their official capacities and through the security and intelligence apparatus financed by NIOC and NITC revenues — Defendants destroyed Plaintiff's real and personal property in Turkey.

53. The arson attack deliberately set fire to and destroyed Plaintiff's office premises in Istanbul, together with their contents, including furnishings, fixtures, equipment, business records, files, and other tangible property situated therein.

54. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained substantial economic damages recoverable under 28 U.S.C. § 1605A(d), including but not limited to:

   a. the loss of and damage to the office premises in Istanbul;

   b. the loss of and damage to the contents of the premises, including furnishings, fixtures, and equipment;

   c. the loss of business assets, inventory, and property situated at the premises;

   d. the destruction of professional and business records maintained at the premises;

   e. the loss of ongoing business income and profits derived from and through the Istanbul office;

   f. the costs of relocation and the establishment of replacement premises and operations; and

   g. other consequential economic losses flowing directly from the destruction of that property and place of business.

55. The foregoing economic damages are in addition to, and separate from, the compensatory damages for personal injury, emotional distress, and pain and suffering alleged in the preceding Count.

56. Defendants' conduct was deliberate, malicious, and carried out in reckless disregard of Plaintiff's life, safety, and property, and was committed by and on behalf of a designated state sponsor of terrorism. Plaintiff is therefore entitled to punitive damages under 28 U.S.C. § 1605A(d).

57. By reason of the foregoing, and pursuant to 28 U.S.C. § 1605A(c) and § 1605A(d), Plaintiff is entitled to recover from Defendants economic damages - including damages for the destruction of his property in Turkey and for lost business income - together with solatium, damages for pain and suffering, and punitive damages, in amounts to be proven at trial.

### VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alex Smith respectfully prays that this Court enter judgment in his favor and against Defendants the Islamic Republic of Iran, the National Iranian Oil Company, and the National Iranian Tanker Company, jointly and severally, and award the following relief:

**A.** Judgment against Defendants on all causes of action pleaded in this Complaint;

**B.** Compensatory damages in an amount to be proven at trial, including: (1) damages for Plaintiff's severe mental anguish and emotional distress, including solatium, arising from Defendants' post-naturalization hostage taking, torture of his family members, and attempts on his life; (2) damages for Plaintiff's physical injuries, including the April 18, 2024 cardiac event, caused by the accumulated stress of Defendants' acts; (3) economic damages, including the loss of Plaintiff's office, profession, and livelihood and the destruction of his

Istanbul office by arson; and (4) all other economic and non-economic losses proven at trial;

**C.** Punitive damages in an amount sufficient to punish Defendants and to deter future state-sponsored terrorism, as authorized by 28 U.S.C. § 1605A(c);

**D.** Costs of litigation, reasonable attorneys' fees, and pre-judgment and post-judgment interest as permitted by law; and

**E.** Such other and further relief as the Court deems just, proper, and equitable.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: July 2, 2026

Respectfully submitted,

/s/ Ali Herischi

Ali Herischi, Esq. (MD0024)
Herischi & Associates LLC
11300 Rockville Pike, Ste 712
N. Bethesda, MD 20852
ali.herischi@ibhlaw.com
Tel.: 301.363.4540
Counsel for Plaintiff Alex Smith